**Eileen DUNN, Plaintiff,**

v.

**SECRETARY OF the UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants.**

**Civ. No. 88–0165–B.**

United States District Court,
D. Maine.

April 11, 1990.

Judson Esty–Kendall, Pine Tree Legal Assistance, Inc., Bangor, Me., for plaintiff.

Marina E. Thibeau, Asst. Atty. Gen., Dept. of Human Services, Legal Div., Augusta, Me., for defendant Com'r, Maine Dept. of Human Services.

Michael M. DuBose, Asst. U.S. Atty., Bangor, Me., for defendant Lyng, Secretary of U.S. Dept. of Agriculture.

## MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

■ Plaintiff filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, alleging that there exists no genuine issue of material fact concerning her claim that the Food Stamp Act does not permit Defendants to offset an underissuance, caused by Defendants' error and owed to Plaintiff, against an overissuance that is owed by Plaintiff and is also caused by Defendants' error. Defendant Secretary filed a cross motion for summary judgment maintaining that the actions taken by the state agency, offsetting underissuances against overissuances, are prescribed by federal regulations and that those regulations are valid and in accordance with the Food Stamp Act (Act). The Court finds that the provisions of the Act clearly prohibit an offset of underissuances against overissuances where Defendants' error caused both funding problems. Therefore, the Court will deny Defendants' Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment.

### Background

The Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, established a federally funded, state-administered program to supplement the food purchasing power of needy individuals. The Secretary of Agriculture determines the eligibility and benefit standards for participation in the program. 7 U.S.C. § 2014(b). To aid in the administration of this important program, Congress granted authority to the Secretary to issue regulations, consistent with the Act, as the Secretary deems necessary or appropriate. 7 U.S.C. § 2013(c). States that choose to participate in the program, must follow the Act and the regulations promulgated by the Secretary, but are responsible for day-to-day operations.[1] 7 C.F.R. § 272.2.

1. Thus, while Plaintiff brought suit against both the Secretary of Agriculture and the Maine Department of Human Services, the crux of the suit is against the federal regulations that the

For the purposes of these motions, the undisputed facts are as follows. Plaintiff was entitled to receive ten dollars in food stamp coupons for each of the following months: December 1987; January 1988; and February 1988. The Secretary issued to Plaintiff ninety-nine dollars in food stamp coupons in December, an eighty-nine dollar food stamp overissuance. Plaintiff received no food stamp coupons in either January or February, a twenty dollar food stamp underissuance. The Secretary admits that both the overissuance and the underissuance were caused by errors made by the state agency. Secretary's memorandum at 2.

The state agency, relying on 7 C.F.R. §§ 273.18(c)(1)(iii) & 273.17(d)(4),[2] offset the twenty dollar underissuance against the eighty-nine dollar overissuance and informed Plaintiff that Plaintiff owed sixty-nine dollars. Plaintiff filed suit, claiming that the regulations promulgated by the Secretary and enforced by the state agency through state provisions are contrary to the Act, and that they are, therefore, are invalid. Plaintiff seeks declaratory and injunctive relief and prays that the Court order the state agency to pay Plaintiff the twenty dollars in food stamp coupons which were wrongfully withheld. Plaintiff also seeks attorney's fees from Defendants.[3] The Secretary argues that its regulations are in accord with the Act and are valid.

### Discussion

■ The Supreme Court set out the basis for proper judicial review of an agency's statutory interpretation in *Chevron U.S.A.*

*v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron,* the Supreme Court stated that courts must begin their analysis by determining whether the "intent of Congress is clear." *Id.* at 842, 104 S.Ct. at 2781. If Congress's intent is clear, then the regulation must be fully consistent with the statutory meaning. *Id.* at 842–43, n. 9, 104 S.Ct. at 2781, n. 9; *National Labor Relations Board v. United Food & Commercial Workers,* 484 U.S. 112, 123, 108 S.Ct. 413, 420–21, 98 L.Ed.2d 429 (1987). If the intent of Congress is *not* clear, courts must defer to the agency's interpretation of the statute, provided that it is based on a permissible construction and is rational. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82; *National Labor Relations Board,* 484 U.S. at 123, 108 S.Ct. at 420–21.

■ To apply the first step of analysis, the Court must employ its traditional tools of statutory construction to ascertain Congress's clear intention, if such a clear intention exists. *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9; *Immigration and Naturalization Service v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 1220–21, 94 L.Ed.2d 434. The starting point in any interpretation of a statute is with the plain language of the provision itself. *Board of Governors v. Dimension Financial Corporation,* 474 U.S. 361, 368, 373, 106 S.Ct. 681, 685–86, 688, 88 L.Ed.2d 691 (1986).

Plaintiff relies primarily on 7 U.S.C. § 2020(e)(11), which provides that

> After calculating the amount of the inadvertent household or administrative error claim, the State agency shall offset the amount of the claim against any amounts which have not yet been restored to the household in accordance with § 273.17. The State agency shall then initiate collection action for the remaining balance, if any.
>
> 7 C.F.R. § 273.18(c)(1)(iii).

---

state agency must enforce. The Court will, therefore, address only the federal regulations.

**2.** The regulations provide:
> If a claim against a household is unpaid or held in suspense as provided in § 273.18, the amount to be restored shall be offset against the amount due on the claim before the balance, if any, is restored to the household. At the point in time when the household is certified and receives an initial allotment, the initial allotment shall not be reduced to offset claims, even if the initial allotment is paid retroactively.
>
> 7 C.F.R. § 273(d)(4).

**3.** Plaintiff makes no argument for attorney's fees in her memorandum of law supporting her Motion for Summary Judgment. Thus, the Court will not deal with that issue in this opinion.

The State plan of operation ... shall provide ...

(11) upon receipt of a request from a household, for the prompt restoration in the form of coupons to a household of any allotment or portion thereof which has been wrongfully denied or terminated, except that allotments shall not be restored for any period of time more than one year prior to the date the State agency receives a request for such restoration from a household or the State agency is notified or otherwise discovers that a loss to a household has occurred.

7 U.S.C. § 2020(e)(11). The provision is clear. On its face, the provision requires the state agency to promptly restore, in the form of coupons, wrongfully denied or terminated food stamp coupons. *Id.* Neither party disagrees that the state agency wrongfully underissued Plaintiff's January and February food stamp allotments. Thus, the Act, by its unambiguous terms, required the state agency to promptly restore to Plaintiff, in the form of food stamp coupons, the allotments wrongfully denied Plaintiff.[4] This was not done.

Because section 2020(e)(11) deals specifically, in plain language, with underissuances caused by state agency error, the Court, as well as the Secretary, must abide by the plain language of the Act. Thus, federal regulations, 7 C.F.R. §§ 273.17 & 273.18, and state rules requiring state agencies to offset underissuances caused by agency er-

ror against overissuances conflict with the Act and are invalid.

The Secretary argues, however, that offsetting underissuances is permitted by 7 U.S.C. §§ 2022(b)(2)(A) & (B).[5] These provisions permit the state to recover overissuances caused by agency error by means other than reducing monthly allotments. *Id.* The Secretary correctly notes that Congress intended to prevent state agencies who caused an overissuance from reducing an applicant's *future* monthly allotments. *See* 1982 U.S.Code Cong. & Admin. News 1703. The Secretary maintains that, because the Act does not forbid the offset of *past* monthly allotments, he was free to pass regulations requiring such an offset. In fact, the Secretary notes that "nothing in the language of the Act" provides otherwise.

■ While this Court will defer to an Agency's rational interpretation of unclear legislation, where Congress has provided a plain meaning, both the Agency and the Court must follow Congress's intent. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82; *National Labor Relations Board,* 484 U.S. at 123, 108 S.Ct. at 1420–21. While the Secretary's interpretation of the statutory language, "other means," may represent a rational interpretation of a statute,[6] the Act clearly mandates that underissuances must be returned promptly in the form of coupons. Thus, the Secretary's interpretation of "other means" must give

---

**4.** There is no dispute in this case concerning the required household request, notice or the year-long restoration cut off provided for in section 2020(e)(11).

**5.** These provisions read as follows:

(b)(2)(A) State agencies shall collect any claim against a household arising from the overissuance of coupons, other than claims the collection of which is provided for in paragraph (1) of this subsection and claims arising from an error of the State agency, by reducing the monthly allotments of the household. These collections shall be limited to 10 per centum of the monthly allotment (or $10 per month, whenever that would result in a faster collection rate).

(B) State agencies may collect any claim against a household arising from the overissuance of coupons, other than claims collect-

ed pursuant to paragraph (1) or subparagraph (A), by using other means of collection.

7 U.S.C. § 2022.

**6.** The Court notes that the Secretary's regulations, 7 C.F.R. §§ 273.17(d)(4) & 273.-18(c)(1)(iii), as interpreted in the Secretary's policy memorandums 80–26 and 81–44, make little sense when applied in various contexts. For example, the Secretary requires a state agency to offset benefits when an application for recertification is filed on time, but is not acted upon in a timely fashion due to state agency error. However, the Secretary will not permit a state agency to offset benefits when an application for recertification is filed late by the applicant because a late application for recertification is treated as an initial certification. Thus, the Secretary penalizes the applicants for recertification who file on time, while rewarding those who file late.

way to the plain language of section 2020(e)(11).

The Secretary also argues that the offset regulations, while not expressly provided for in the Act, are provided for in the Federal Claims Collection Act, 31 U.S.C. § 3711, *et seq.* The Secretary relies on the language of section 3716(a) that states in pertinent part:

(a) After trying to collect a claim from a person under section 3711(a) of this title, the head of an executive or legislative agency may collect the claim by administrative offset. . . .

31 U.S.C. § 3716(a). The Court need not decide the applicability of the Claims Collection Act to food stamp overissuances because the Defendants did not comply with the terms stated in section 3716(a). Defendants did not attempt to collect the overissuance by any means other than an offset. Thus, Defendants may not rely on this provision.

In sum, the Secretary's regulations, 7 C.F.R. §§ 273.18(c)(1)(iii) & 273.17(d)(4), and correlating state rules, requiring that state agencies offset underissuances against overissuances in cases where both funding mistakes were caused by state agency error, are invalid because they conflict with the plain meaning of 7 U.S.C. § 2020(e)(11). Plaintiff is, therefore, entitled to prompt restoration of the twenty dollar underissuance in the form of coupons. *See Foggs v. Block*, 722 F.2d 933, 941 n. 6 (1983) (district court may order restoration of benefits) *rev'd on other grounds sub nom. Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985).

Accordingly, the Court ORDERS that Plaintiff's Motion for Summary Judgment be, and it is hereby, GRANTED. It is further ORDERED that Defendants' Motion be, and it is hereby, DENIED.